# BEFORE THE SUPREME COURT OF THE STATE OF ALABAMA

Marshw Opp
Bufw
11-29-00

| | |
|---|---|
| Carl Emmett Wyatt, <br>     petitioner. <br> vs. <br> State of Alabama, <br>     respondent. | * On Appeal from the Circuit <br> * Court of Autauga County <br> * Case No. CC-99-322 <br> * Court of Criminal Appeals <br> * of the State of Alabama <br> * Case No. CR-99-1947 <br> * Decided: Oct. 20, 2000 <br> * Reh'rg denied: Nov 3rd, 2000 |

Circuit Court of Autauga County
SC No. _____

## PETITION FOR WRIT OF CERTIORARI

To the SUPREME COURT of ALABAMA:

Comes Now the Petitioner CARL EMMETT WYATT, pro se, and pursuant to Rule 39 of the ALABAMA RULES of APPELLATE PROCEDURE, respectfully petitions for a WRIT of CERTIORARI to review the decision rendered previously herein by the Court of Criminal Appeals on Nov 3rd 2000


EXHIBIT G

## Statement of the CASE

On June 1, 1999 Carl Wyatt allegedly shot his friend Herman Searcy. On June 8, 1999, Mr. Searcy died for a pulmonary embolism. Mr. Wyatt was indicted on July 30, 1999 by a Grand Jury in Autauga County, Alabama on the charges of Murder and Reckless Murder. Mr. Wyatt was tried for Reckless Murder on May 8, 2000, and found guilty. On June 14, 2000, Mr. Wyatt was sentenced to thirty years incarceration.

Statement of the Issues Presented for Review

I. Whether there was sufficient evidence to convict CARL WYATT

II. Whether CARL WYATT waived his MIRANDA RIGHTS.

III. Whether the Jury was charged with the correct definition of reasonable doubt.

Statement of Facts

In the weeks prior to the underlying incident, Carl Wyatt and his friend, Herman Searcy, were robbed and burglarized numerous times (R-55, 109, 103, 111). Because of this Mr. Wyatt purchased a pistol for protection (R-122). Mr. Wyatt lived on the same street but Mr. Searcy asked Mr. Wyatt to stay at the Searcy home to assist Mr. Searcy because of the numerous recent break-ins (R-116). On June 1, 1999, Mr. Wyatt was staying at the home of Mr. Searcy (R-116). Both had been drinking alcohol all day on May 31, 1999 (R-126). So during the darkness in the early morning of June 1, 2000, Mr. Wyatt heard the entry door of the home slam shut (R-127). As he had a pistol with him, he shot at the outline of what he expected to be an intruder, and who actually turned out to be his friend, Mr. Searcy (R-127).

Mr. Wyatt had to convince Mr. Searcy to go to the hospital because Mr. Searcy did not think he could go without insurance (R-128, 129). Mr. Searcy died on June 9, 1999 following complications after the medical treatment (R-82).

## Conclusion

The evidence presented at trial does not support the conclusion reached by the jury in the trial Court. For these reasons, the appellant respectfully prays the conviction be reversed or remanded for a new trial.

Respectfully submitted, this the 15th day of November, 2000

respectfully yours,

*Carl E. Wyatt*

CARL E WYATT
P.O. Box 10
Clio, AL 36017-0010

*Wayne Bailey*
notary public
11-3-2001
my commissary expires

Certificate of Service

I hereby certify that I have served a copy of the foregoing instrument on the following by U.S. mail, properly addressed and postage prepaid on this the 16th day of November 2000

Honorable: Bill Pryor
Attorney General of Alabama
11 South Union
Montgomery, Alabama 36130

Honorable: Lane W. Mann
Court of Criminal Appeals
P.O. Box 301555
Montgomery, Alabama
36130-1555

_Carl E. Wyatt_
Petitioner

# Court of Criminal Appeals
## State of Alabama
### Judicial Building, 300 Dexter Avenue
### P. O. Box 301555
### Montgomery, AL 36130-1555

FRANCIS ALLEN LONG, SR.
Presiding Judge
H. WARD McMILLAN
SUE BELL COBB
PAMELA W. BASCHAB
JAMES H. FRY
Judges



Clerk's Office
(334) 242-4590

## MEMORANDUM

CR-99-1947

Autauga Circuit Court No. CC-99-322

### Carl Emmett Wyatt v. State

FRY, Judge.

The appellant, Carl Emmett Wyatt, was convicted of murder, a violation of § 13A-6-2, Ala. Code 1975. He was sentenced to 30 years' imprisonment.

### I.

The appellant contends that the state failed to establish a prima facie case of reckless murder.

Section 13A-6-2, states, in pertinent part:

"(a) A person commits the crime of murder if:

"...

"(b) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct or creates a grave risk of death to a person other than himself, and thereby causes the death of another person."

In Jordan v. State, 629 So. 2d 738 (Ala.Crim.App. 1993), this Court stated:

> "The appellant specifically asserts that the State failed to produce sufficient evidence establishing 'circumstances manifesting extreme indifference to human life.' This Court has stated that some 'shocking, outrageous or special heinousness' must be shown to establish extreme indifference to human life. King v. State, 505 So. 2d 403, 407 (Ala.Crim.App. 1987). In determining whether there was sufficient evidence to support the verdict of the jury, we must accept as true the evidence introduced by the State, draw all legitimate inferences from the evidence, and consider that evidence in the light most favorable to the State. Morgan v. State, 589 So. 2d 1315, 1317 (Ala.Crim.App. 1991); Jackson v. State, 516 So. 2d 726, 752 (Ala.Crim.App. 1985)."

629 So. 2d at 742.

The state's evidence established the following. Jay McMichael, an Autauga County deputy sheriff, testified that, on the afternoon of June 1, 1999, he received a call regarding a shooting and went to the hospital to investigate. Jay McMichael stated that the appellant was present at the hospital and told him that the victim, Herman Searcy, had scared him and that he shot Searcy. Jay McMichael further stated that he drove the appellant to the police station. John McMichael, a City of Prattville police officer, testified that the appellant submitted to an Intoxilyzer 5000 blood alcohol test and that, at 9:58 p.m., the appellant's blood alcohol content was .15%.

Donny Nelson, an Autauga County chief deputy, testified that, on the morning of June 2, 1999, he read the appellant his Miranda rights and the appellant waived his rights. Nelson testified that the appellant told him the following:

> "I had been staying with Mr. Searcy on and off for about two months. During this time, we had reported three break-ins. Mr. Searcy didn't have any kind of weapon in his residence, so I bought the .22 caliber short revolver about three weeks ago in Montgomery, Alabama at a night club from a man I didn't know for ten dollars. ... Anyway, yesterday about 3:00 a.m., June the 1, 1999, Herman Searcy and myself started drinking beer. About 9:00 a.m., June 1, me and Herman went to the Winn-Dixie in Millbrook and we bought some more beer, at the time and bought six more beers. We had about twelve beers left in the refrigerator at home. We drank beer until about 12:30 p.m. noon that day June 1, 1999. Then my VA check came in the mail. I believe we had drank about 18 beers by then. Also before my check came we had drank about four or five cups each of homemade wine in addition to the beer. After my check came we went to Peoples Bank in Millbrook and cashed it, $96. We left the bank and went to the ABC Store in Millbrook and bought a fifth of Canadian whiskey. Then we went back to Herman's house and drank the fifth of whiskey. At that point I fell asleep sitting up on the couch in the living room. On the end closest to the door I had a pistol beside me stuck under the couch cushion. All of a sudden I heard the front door open. I woke up. It startled me. I saw someone standing there. I grabbed the gun and shot the person. At that time I didn't know who it was. I had told Mr. Searcy before don't come up on me all of a sudden. Make yourself known or I might think it is someone breaking in on us.

> "When I shot him we were both very intoxicated. Herman said, 'You shot me.' I put him in the car and brought him to the hospital in Prattville and the ambulance took him to Jackson's, onto Jackson's in Montgomery."

(R. 52-54.)

Nelson stated that he asked the appellant, "Would it have made any difference who came through the door when you shot Mr. Searcy or would you have shot anyone else?" (R. 54) and the appellant responded:

> "It wouldn't have made any difference. I was startled and I would have shot whoever came through the door. In my mind I thought someone was breaking in."

(R. 54.)

Additionally, Nelson testified that, on June 11, he read the appellant his Miranda rights and the appellant waived his rights. Nelson further testified that the appellant stated, "I know I wouldn't have shot the person if I had known it was Herman. I realize I act[ed] recklessly by not waiting to see who was coming in, but I was so jumpy from the previous burglaries and I was also intoxicated. I just shot before I thought." (R. 59.)

Nelson also testified that, shortly after the incident occurred, he went to Searcy's mobile home and found several cans and bottles throughout the house and a milk jug with a balloon attached to it for making homemade wine. The record indicated that a .22 caliber pistol was found in the appellant's car.

Gregory Wanger, a state medical examiner, testified that he conducted an autopsy on Searcy's body. Wanger stated that, in his opinion, Searcy died from complications resulting from a gunshot wound to the abdomen. Specifically, Wanger stated that Searcy suffered a pulmonary embolism of a result of a gunshot wound.

When viewing the evidence in the light most favorable to the state, we conclude that the state established a prima facie case of reckless murder. See Jordan v. State, supra. In this case, records indicated that, a few hours after the incident, the appellant had a .15% blood alcohol content. Nelson testified that the appellant told him that he was extremely intoxicated on the day that the incident occurred, that he did not wait to see who was coming through the door, that he did not know that the person at the door was Searcy, and that he picked up his loaded pistol and fired it at the door. Wanger testified that, in his opinion, Searcy died from complications resulting from a gunshot wound to the abdomen. Thus, the evidence was sufficient to establish that the appellant, under circumstances manifesting extreme indifference to human life, recklessly engaged in conduct or created a grave risk of death to Searcy, thereby causing the death of Searcy. Based on the foregoing, the trial court did not err in denying the appellant's motion for a judgment of acquittal.

II.

The appellant appears to contend that the trial court erred in overruling his objection to introduction of a statement made by the appellant to Jay McMichael. Specifically, he argues that he

was under the influence of alcohol at the time he made the statement, and that he was unable to appreciate the consequences of waiving his rights.

> "Miranda warnings are not necessarily required to be given to everyone whom the police question. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Miranda is only applicable when an individual is subjected to custodial interrogation. Davis v. Allsbrooks, 778 F.2d 168, 170 (4th Cir. 1985); Primm v. State, 473 So.2d 1149, 1158 (Ala.Crim.App.), cert. denied, 473 So.2d 1149 (Ala. 1985). 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way.' Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612.
>
> "There is a distinction which must be made between general interrogation and custodial interrogation since Miranda is inapplicable when interrogation is merely investigative rather than accusative. Kelley v. State, 366 So.2d 1145, 1148 (Ala.Crim.App. 1979); Primm, supra, at 1158; Johnston v. State, 455 So.2d 152, 156 (Ala.Crim.App.), cert. denied, 455 So.2d 152 (Ala. 1984). This distinction should be made on a case-by-case basis after examining all of the surrounding circumstances. United States v. Miller, 587 F.Supp. 1296, 1299 (W.D.Pa. 1984); Johnston, supra, at 156; Warrick v. State, 460 So.2d 320, 323 (Ala.Crim.App. 1984); Hall v. State, 399 So.2d 348, 351-52 (Ala.Crim.App. 1981); Kelley, supra at 1149."

Hooks v. State, 534 So.2d 329, 347-48 (Ala.Cr.App. 1987).

In deciding whether the questioning of a suspect is a custodial interrogation, the following factors should be considered:

> "'(1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain the individual. United States v. Crisco, 725 F.2d 1228, 1231 (9th Cir.), cert. denied, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984)....'"

Hooks v. State, 534 So.2d at 348 (some citations omitted), quoting United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985). See also State v. Smith, 715 So.2d 925, 926 (Ala.Cr.App. 1998).

Additionally, in Stone v. City of Huntsville, 656 So.2d 404, 409 (Ala.Cr.App. 1994), this Court stated:

> "'A suspect is therefore "in custody" for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation -- that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances.'"

656 So. 2d at 408 (emphasis omitted), quoting United States v. Bengivenga, 845 F.2d 593, 596 (5th Cir.), cert. denied, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988).  See Hubbard v. State, 500 So. 2d 1204 (Ala.Crim.App. 1986) (officer's questions to defendant about what happened and the whereabouts of the gun were investigative rather than accusative; therefore, Court held that a reading of Miranda rights was not necessary).

In this case, Jay McMichael testified that, at the hospital shortly after the incident occurred, he read the appellant his Miranda rights, and the appellant indicated that he understood.  Jay McMichael stated that, although he smelled the odor of alcohol on the appellant, the appellant did not appear to be intoxicated.  Jay McMichael further stated that the appellant told him that he had been drinking alcoholic beverages throughout the day.  According to Jay McMichael, when he asked the appellant what happened to Searcy, the appellant stated, "I shot him and I would shoot him again if I had to."  (R. 12.)  Jay McMichael testified that the appellant told him that, because Searcy scared him, he shot him.  Additionally, Jay McMichael testified that, when he questioned the appellant regarding the whereabouts of the pistol, the appellant told him that he left his pistol in his mobile home, and later, the appellant indicated that he may have left the pistol in his car.

Given that Jay McMichael questioned the appellant at the hospital shortly after the incident, and asked the appellant general investigative questions concerning how the shooting occurred and the location of the pistol, the appellant was not subjected to a custodial interrogation.  Thus, even though Jay McMichael read the appellant his Miranda rights, the Miranda warnings were not necessary.

Furthermore, even if the appellant was subjected to a custodial interrogation, the totality of the circumstances do not indicate that the appellant was unable to understand his Miranda rights and the consequences of a waiver.

In Jackson v. State, 674 So. 2d 1318 (Ala.Crim.App. 1993), affirmed as to conviction, reversed and remanded as to sentence, 674 So.2d 1365 (Ala. 1994), this Court stated:

> "'"[U]nless intoxication, in and of itself, so impairs the defendant's mind that he is "unconscious of the meaning of his words," the fact that the defendant was intoxicated at the time he confessed is simply one factor to be considered when reviewing the totality of the circumstances surrounding the confession.' Carr v. State, 545 So.2d 820, 824 (Ala.Cr.App. 1989).  "The intoxicated condition of an accused when he makes a confession, unless it goes to the extent of mania, does not affect the admissibility and evidence of the confession, but may effect its weight and credibility.' Callahan v. State, 557 So.2d 1292, 1300 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989)."
>
> "'White v. State, 587 So.2d 1218 (Ala.Cr.App. 1990).'
>
> "State v. Austin, 596 So.2d 598, 601 (Ala.Cr.App. 1990)."

Jackson v. State, 674 So.2d at 1326.  See also Gaddy v. State, 698 So.2d 1100, 1117 (Ala.Crim.App. 1995), affirmed, 698 So. 2d 1150 (Ala.), cert. denied, 118 S.Ct. 634, 139 L.Ed.2d 613, ___ U.S. ___ (1997).

In light of the totality of the circumstances and given that Jay McMichael testified that the appellant appeared to understand his rights, the evidence did not establish that the appellant was unconscious of the meaning of his words. The intoxicated state of the appellant was a factor for the jury to consider. See Jackson v. State, supra.

Based on the foregoing, we conclude that the trial court did not err in overruling the appellant's objection to the admission of the statement to Jay McMichael into evidence.[1]

### III.

The appellant contends that the trial court erred in instructing the jury concerning reasonable doubt.

The appellant has raised this issue for the first time on appeal. Rule 21.3, Ala.R.Crim.P., states, in pertinent part:

> "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection."

See Harris v. State, 683 So. 2d 26 (Ala.Crim.App. 1996).

Moreover, the trial court did not err in giving a jury charge on reasonable doubt. In addition to charging the jury regarding the presumption of the appellant's innocence, the burden the State had in overcoming this presumption, and the definition of "reasonable doubt," the trial court instructed:

> "It has been said that proof beyond a reasonable doubt is proof of such a convincing character that you would be willing to rely and act upon it in the most important of your own affairs."

(R. 160.)

In Ex parte Trawick, 698 So. 2d 162 (Ala. 1997), the trial court gave the same charge relating to reasonable doubt. The Alabama Supreme Court stated:

> "Trawick argues that this statement lowered the burden of proof because, he says, it 'guided the jurors' understanding about the State's burden in terms of their own personal affairs.' We do not agree; on the contrary, we find the statement effectively highlighted the high degree of proof that was necessary to prove Trawick's guilt, by describing it in a way that made it more personal for the jurors. Moreover,

---

[1] The record indicates that the appellant gave several statements to law enforcement officers on the morning of June 2, 1999 and the afternoon of June 11, 1999. However, the record reveals that the appellant was not intoxicated, was read his Miranda rights, and voluntarily waived his rights.

in the balance of its instruction, the trial court consistently emphasized the presumption of Trawick's innocence, the burden the State had in overcoming this presumption, and the definition of 'reasonable doubt' as a product of the jury's common sense and reason. We find no error in the court's definitions of the reasonable doubt standard and the State's burden of proof."

698 So. 2d at 173. See also Jackson v. State, [CR-97-2050, May 28, 1999] ___ So. 2d ___ (Ala.Crim.App. 1999).

Given that the trial court's charge was not an incorrect statement of law, and that, when reviewing the charge in the context of the entire instructions to the jury, the charge on reasonable doubt was neither misleading nor erroneous, the trial court did not err in giving its instructions regarding reasonable doubt.

Accordingly, the judgment of the trial court is affirmed.

**AFFIRMED.**

Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.