NO. CR-99-1947

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

CARL EMMETT WYATT,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
AUTAUGA COUNTY, ALABAMA,
(NO. CC-99-322)

BRIEF AND ARGUMENT

OF

BILL PRYOR
ATTORNEY GENERAL

AND

JOSEPH G. L. MARSTON, III
ASSISTANT ATTORNEY GENERAL
ATTORNEYS FOR APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300



# TABLE OF CONTENTS

PAGE

TABLE OF CASES.......................................................................... ii

TABLE OF CONSTITUTIONAL PROVISIONS............................... v

TABLE OF STATUTES.................................................................. v

TABLE OF RULES OF COURT...................................................... v

STATEMENT OF THE CASE ....................................................... 1

STATEMENT OF ISSUES PRESENTED......................................... 3

STATEMENT OF THE FACTS....................................................... 4

ARGUMENT................................................................................. 11

    I. IN RE: THE SUFFICIENCY OF THE EVIDENCE............. 11

    II. IN RE: MENTAL STATE AND <u>MIRANDA</u>........................ 13

        A. IN RE: THE STATEMENT HEARD
           BY DEPUTY BURKS............................................ 13

        B. IN RE: THE STATEMENT TO
           DEPUTY McMICHAEL....................................... 15

        C. IN RE: SUBSEQUENT STATEMENTS.................. 20

    III. IN RE: THE CHARGE TO THE JURY........................... 21

CONCLUSION............................................................................ 23

APPENDIX................................................................................. 24

CERTIFICATE OF SERVICE...................................................... 27

## TABLE OF CASES

PAGE(S)

Allen V. State,
    611 So.2d. 1188, (Ala.Crim.App, 1992)............................ 12

Baker V. State,
    599 So.2d. 60, (Ala.Crim.App, 1991)................................ 20

Biddie V. State,
    516 So.2d. 846, (Ala, 1987) ............................................ 22

Beckwith V. United States,
    425 U.S. U.S. 341, 48 L.Ed.2d. 1,
    96 S.Ct. 1612, (1976)...................................................... 16

Berkemer V. McCarty,
    468 U.S. 420, 82 L.Ed.2d. 317,
    104 S.Ct. 3138, (1984)................................................... 16

Brooks V. Alabama,
    522 U.S. 893, 139 L.Ed.2d. 164,
    118 S.Ct. 233, (1997)...................................................... 21

Brooks V. State,
    599 So.2d. 1238, (Ala.Crim.App, 1992)............................ 20

Cage V. Louisiana,
    498 U.S. 39, 112 L.Ed.2d. 339,
    111 S.Ct. 339, (1990) .................................................21, 22

City Of Montgomery V. Weldon,
    280 Ala. 463, 195 So.2d.110, (1967) ....................................... 16

Colorado V. Connelly,
    479 U.S. 157, 93 L.Ed.2d. 473,
    107 S.Ct. 515, (1986) ..................................................... 19

Estelle V. McGuire,
    502 U.S. 62, 116 L.Ed.2d. 385,
    112 S.Ct. 475, (1991) ..................................................... 21

Ex parte Beavers,
    598 So.2d. 1320, (Ala, 1992) .......................................... 22

Ex parte Brooks,
    695 So.2d. 184, (Ala, 1997) ............................................ 21

Ex parte Clark,
    728 So.2d. 1126, (Ala, 1998) .......................................... 14

Ex parte Jude,
    686 So.2d. 536, (Ala, 1996)............................................ 16

Ex parte Williams,
    710 So.2d. 1350, (Ala, 1997) .......................................... 21

Florida V. Bostick,
    501 U.S. 429, 115 L.Ed.2d. 389,
    111 S.Ct. 2382 (1991)..................................................... 17

Hoffa V. United States,
    385 U.S. 293, 17 L.Ed.2d. 374,
    87 S.Ct. 408, (1966)........................................................ 16

Illinois V. Perkins,
    496 U.S. 292, 110 L.Ed.2d. 243,
    110 S.Ct. 2394, (1990). .................................................. 17

Michigan V. Chesternut,
    486 U.S. 567, 100 L.Ed.2d. 565,
    108 S.Ct. 1975, (1988)..................................................... 17

Miranda V. Arizona,
    384 U.S. 436, 16 L.Ed.2d. 694,
    86 S.Ct. 1602, (1966)......................................... 3, 6, 13-20

Oregon V. Mathiason,
    429 U.S. 492, 50 L.Ed.2d. 714,
    97 S.Ct. 711, (1977) ...................................................... 17

Rheuark V. State,
    601 So.2d. 135, (Ala.Crim.App, 1992) ............................. 20

Stansbury V. California,
    511 U.S. 318, 128 L.Ed.2d. 293,
    114 S.Ct. 1526, (1994)...................................................... 17

State V. Austin,
    596 So.2d. 598, (Ala.Crim.App, 1991)............................... 20

State V. Jude,
    686 So.2d. 528, (Ala.Crim.App, 1996)........................ 16, 17

Tims V. State,
    711 So.2d. 1118, (Ala.Crim.App, 1997)............................ 12

United States V. Mendenhall,
    446 U.S. 544, 64 L.Ed.2d. 497,
    100 S.Ct. 1870, (1980)...................................................... 17

Victor V. Nebraska,
    511 U.S. 1, 127 L.Ed.2d. 583,
    114 S.Ct. 1239, (1994) ...................................................... 21

Williams V. Alabama,
    524 U.S. 929, 141 L.Ed.2d. 699,
    118 S.Ct. 2325, (1998) ...................................................... 21

Williams V. State,
    710 So.2d. 1276, (Ala.Crim.App, 1996) ............................ 21

## TABLE OF CONSTITUTIONAL PROVISIONS

PAGE(S)

Alabama Constitution, 1901,

     Article I, Section 6...................................................... 18-19

United States Constitution, 1788,

     Amendment V, 1791....................................................... 18

## TABLE OF STATUTES

PAGE(S)

Code Of Alabama, (1975),

     Title 13A, Section 13A-5-6. ......................................... 2, 25

     Section 13A-6-2. .............................. 1, 2, 25-26

## TABLE OF RULES OF COURT

PAGE(S)

Alabama Rules of Criminal Procedure,

     Rule 21.1. ...................................................... 22

NO. CR-99-1947

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

CARL EMMETT WYATT,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
AUTAUGA COUNTY, ALABAMA,
(NO. CC-99-322)

_____

BRIEF AND ARGUMENT OF APPELLEE,
THE STATE OF ALABAMA

_____

## STATEMENT OF THE CASE

The appellant, Carl Emmett Wyatt, was indicted by the July, 1999, Session of the Grand Jury of Autauga County, Alabama, for murder[1]. (C. pp. 8-9)

On August 31, 1999, Wyatt, attended by his attorney, Mr. Robert L. Bowers, Esq, waived arraignment and pleaded not guilty. (C. p. 14)

_____

[1] Ibid, Section 13A-6-2(a), appendix.

On May 8, 2000, the cause came on for trial before the Honorable John B. Bush, a Circuit Judge and a jury. Wyatt was attended by his attorney, Mr. Bowers. The State was represented by its district attorney, Ms. Janice Clardy, Esq, and her assistant, Mr. Samuel Scott Partridge, Esq. (C. p. 4 and R-2)

On May 9, 2000, the jury, having heard the evidence, argument of counsel and charge of the court, found Wyatt guilty of murder, as charged in the indictment.  Wyatt was adjudged guilty in accordance with the verdict.  (C. p. 19, and R-171-172)

On June 14, 2000, Wyatt, who had used a firearm in the commission of his crime, was sentenced to thirty years imprisonment[2].  (C. p. 5 and R-173-175.)

This appeal follows. (C. p. 24)

---

[2]. Ibid, Sections 13A-5-6(a)(1) & (4) and 13A-6-2(c), appendix.

2

STATEMENT OF ISSUES PRESENTED

1. Where it is undisputed that the defendant did not intend to kill the victim but that the defendant planned to shoot anyone who "messed with" him and that, when the defendant was in a state of intoxication armed with a loaded gun, the victim approached the defendant and, without determining who was approaching or their intent, the defendant shot the victim, causing his death, is the evidence sufficient to prove reckless murder?

2(A). Does the rule of Miranda V. Arizona, (384 U.S. 436, 16 L.Ed.2d. 694, 86 S.Ct. 1602, [1966]), apply to volunteered statements?

2(B). Does the rule of Miranda V. Arizona, (384 U.S. 436, 16 L.Ed.2d. 694, 86 S.Ct. 1602, [1966]), apply to statements by persons who are not in custody?

2(C). Does the fact that an arrestee was under the influence of alcohol he consumed himself, without any police participation, render the arrestee's statement compelled for the purposes of the State and Federal Constitutions?

3(A). Did the Trial Court's charge to the jury in this case violate the Federal Constitution?

3

3(B). May a complaint about a trial court's charge to the jury be raised for the first time on appeal?

## STATEMENT OF THE FACTS

The appellee's statement of the facts is supplemental to and in correction of Wyatt's statement of the facts.

It was undisputed that on June 1, 1999, Wyatt shot and killed sixty-two-year-old Herman Searcy. The homicide happened at Mr. Searcy's home in Deatsville, Autauga County, Alabama. Wyatt was living with Mr. Searcy at the time.

The only issue in the case was whether the homicide was accidental, reckless, or intentional.

About two weeks before Wyatt shot Mr. Searcy, thirteen-year-old Adam Wadsworth, a neighborhood child, was walking to a friend's home when he encountered Wyatt walking in the opposite direction. The teenager knew Wyatt, and recognized that he was intoxicated. The young man crossed to the other side of the road to avoid Wyatt. Mr. Wadsworth made a point of doing nothing, which might provoke the drunk, avoiding even looking at him. However, as he approached and passed the young man, Wyatt reached into his back pocket and drew a small handgun. (R-69-77)

4

Sixteen-year-old Melissa Wadsworth had never met Wyatt until about two weeks before Wyatt killed Mr. Searcy. After school, Ms. Wadsworth and some of her friends were standing beside a road in Deatsville, when Wyatt drove up in a car and stopped beside the group. Ms. Wadsworth testified:

> ...Q [By the prosecutor]. Okay. And if you could, how did you first notice Mr. Wyatt?
>
> A. He was driving the car and he pulled over beside me and my friends and started talking to us.
>
> Q. Okay. At that time did he say anything to you?
>
> A. He started talking about if anyone messed with him he had something to protect him[self] and we just stood there and he pulled the gun from behind his back... . (R-79)

Wyatt smelled of alcohol, and he had two opened bottles of whiskey on the floorboard of his car. (R-77-79)

On the evening of June 1, 1999, Autauga County Sheriff's Deputies Jay McMichael and Michael Burks were dispatched to the Prattville Community Hospital to investigate a shooting. When they arrived, they learned that Mr. Herman Searcy had been admitted to the hospital with a gunshot wound and that Mr. Searcy had been brought to the hospital by the man who shot him- Carl Emmett Wyatt. (R-8-9 and 18-22)

5

While Deputy Burks was conferring with Deputy McMichael, he heard Wyatt make a volunteered statement: "...Yes sir, I shot him... ." (R-20)

Deputy McMichael advised Wyatt of his rights to silence and counsel and the consequences of a waiver[3]. Wyatt acknowledged his understanding and verbally waived his rights. Deputy McMichael asked Wyatt what happened to his friend, and Wyatt said: "...I shot him and I would shoot him again if I had to... ." (R-12) Wyatt went on to recount that he was bent down doing something on the couch, when Mr. Searcy entered the living room, and Wyatt turned and shot him. Wyatt told Deputy McMichael that after shooting Mr. Searcy, he had dropped the pistol by the couch. Although Wyatt smelled of intoxicating liquor, in the Deputy McMichael's opinion, he was not intoxicated. However, Deputy Burks disagreed. After the interview, Deputy McMichael arrested Wyatt and took him to the Sheriff's Office. (R-9-13 and 22-24)

Sheriff's Investigator Donny Nelson arrived at the Prattville Community Hospital just as Mr. Searcy was being transported to Jackson Hospital in Montgomery. (R-42-44)

---

[3] Miranda V. Arizona, 384 U.S. 436, 16 L.Ed.2d. 694, 86 S.Ct. 1602, (1966).

6

Investigator Nelson went to the scene of the homicide, Mr. Searcy's home at 1744 Alpine Drive, Deatsville, Autauga County, Alabama. The investigator took some photographs and examined the scene, but could find no gun. (R-44-48)

After the search of Mr. Searcy's home failed to produce the murder weapon, a search of Mr. Searcy's white Chrysler Fifth Avenue automobile, which Wyatt had used to transport Mr. Searcy to the hospital, produced the pistol. It had been hidden up under the driver seat. The gun was loaded with two spent rounds and four live rounds. Wyatt kept a spent round under the hammer, as a safety measure, because the pistol had no safety and could be fired without cocking the hammer. (R-13-17 and 100)

Investigator Nelson briefly interviewed Wyatt the night of June 1, 1999, but decided to eschew a full interview until the question of Wyatt's intoxication could be resolved. (R-48-50)

At 9:58 p.m, June 1, 1999, Wyatt submitted to a chemical test for intoxication at the Prattville Police Department. His blood alcohol level was 0.15%. (R-24-36)

At 8:32 a.m, June 2, 1999, Wyatt was interviewed by Detective Nelson and Sheriff's Investigator Joe Sedinger. By this

7

time, Wyatt was sober. Wyatt was again advised of his rights to silence and counsel and the consequences of a waiver of his rights. Wyatt acknowledged his understanding and waived his rights, this time in writing. (R-36-42 and 50-52)

Wyatt described in detail his killing of Mr. Searcy to the investigators. He told the detectives that the previous evening he was asleep on the couch after spending the day drinking. When Mr. Searcy came in the front door of his home, Wyatt woke up and shot him. (R-52-55)

Because of certain discrepancies between his statement and the physical evidence, most notably the trajectory of the bullet, Investigator Nelson interviewed Wyatt a second time on June 11, 1999. Standard Miranda procedure was followed and Wyatt again made a voluntary waiver of his rights and voluntarily answered questions. Wyatt was not intoxicated at the time of this statement. Confronted with the physical evidence, Wyatt conceded that he may have been in a position different from what he had previously claimed. Finally, Wyatt stated that he could not be sure where he was. Detective Nelson asked Wyatt:

> ...Question. What if it had been a six-year-old child
> [who entered the house]?

8

Answer. It wouldn't have made any difference, I would
still have shot... . (R-58)

Wyatt admitted, "...that he acted recklessly...", (R-59),  in shooting
Mr. Searcy. (R-56-59)

At Jackson Hospital, Mr. Searcy underwent surgery for the
gunshot wound Wyatt inflicted on him. Without this medical
treatment, Mr. Searcy would have died. However, not withstanding
the efforts of surgeons and other medical professionals, Mr. Searcy
died a few days after the surgery. The cause of death was gunshot
wound. (R-94-99)

The autopsy of Mr. Searcy's body was performed by Medical
Examiner Gregory Price Wanger. The fatal bullet had traveled
across Mr. Searcy's abdomen in a downward and left direction
through the body.  (R-87-94)

Mr. Searcy's family buried his remains at Greenwood
Cemetery in Montgomery. (R-80-81 and 94-98)

The defense consisted in an effort to explain Wyatt's crime as
a response to some alleged break-ins that had occurred at Mr.
Searcy's home.

9

On April 21, 1999, Deputy Ronnie Neal Lipscomb investigated a report that a man had broken into Mr. Searcy's home and assaulted both Mr. Searcy and Wyatt. He allegedly stole $1,100. 00, before leaving in a gray and white Nissan Toyota. (R-99-103and 106)

On May 1, 1999, Investigator Lipscomb investigated a second nearly identical report at the Searcy residence. (R-103-105)

In each of these investigations, it was Wyatt who did most of the talking, and other than his statements, there was no evidence of a break-in. (R-106-109)

May 27, 1999, Mr. Searcy reported a break-in. Mr. Searcy was injured, but no physical evidence was found. (R-109-115)

Wyatt testified in his own behalf. His testimony was remarkably confused, but was generally consistent with the State's evidence. (R-115-150)

In rebuttal, the State presented Mr. David Brackin, Mr. Searcy's son-in-law. Mr. Brackin testified that on April 16, 1999, at Mr. Searcy's request, he asked Wyatt to leave Mr. Searcy's home. On this occasion, Mr. Searcy appeared to have been struck in the mouth. (R-150-152)

10

<u>ARGUMENT</u>

I.

IN RE: THE SUFFICIENCY OF THE EVIDENCE

Wyatt claims that the evidence was insufficient to prove reckless murder.

Section 13A-6-2(a)(2), <u>Code Of Alabama</u>, (1975), appendix, defines "reckless murder" as follows:

> ...(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person... .

It was undisputed that Wyatt shot Mr. Searcy and that Mr. Searcy died as a result of the gunshot wound inflicted on him by Wyatt. However, it was also undisputed that Wyatt did not intend to kill Mr. Searcy. Indeed, there is no evidence that Wyatt intended to actually kill anyone, shoot them, yes, but not necessarily kill them.

What Wyatt undisputedly intended to do was to shoot anyone who "messed with" him. This was the plan he gratuitously expressed to sixteen-year-old Melissa Wadsworth and her friends and demonstrated to thirteen-year-old Adam Wadsworth, just weeks before Mr. Searcy was killed. In addition, *after* he shot Mr.

11

Searcy, Wyatt told Deputy McMichael, "...I shot him [Mr. Searcy] and I would shoot him again if I had to... ." (R-12) The next morning, a cold sober Wyatt acknowledged to Investigator Nelson that he would have shot the person who entered the room, even if it had been a six-year-old child. (R-58) It is difficult to imagine anything more manifesting of "extreme indifference to human life" than shooting at a person without making any effort to find out who they are and whether they present a threat. It is equally difficult to imagine a more obvious example of conduct, "which creates a grave risk of death to a person" than shooting such a person.

While in a state of extreme intoxication[4], Wyatt kept a loaded gun in close proximity to himself. If Wyatt had driven a car under these circumstances and killed someone, a conviction for reckless murder would have been authorized. *E.g.* Tims V. State, 711 So.2d. 1118, 1120-1122, (Ala.Crim.App, 1997); cert. den; Allen V. State, 611 So.2d. 1188, 1188-1193, (Ala.Crim.App, 1992). But, Wyatt's

---

[4] The chemical test for intoxication performed on Wyatt after his arrest indicted that he was well beyond the level at which an automobile may be lawfully operated. However, it must be borne in mind that this test was performed some hours after the homicide, and there is no evidence that Wyatt was drinking during the intervening time.

12

plan was to shoot at anyone who "messed with him". When Mr.
Searcy entered *his own* living room, Wyatt shot him, without even
looking to see who it was.

Wyatt admitted to Investigator Nelson, "...that he acted
recklessly...". (R-59) Indeed, Wyatt is the "poster child" for reckless
murder.

Obviously, the evidence was sufficient.

## II.

### IN RE: MENTAL STATE AND <u>MIRANDA</u>

Wyatt claims that he did not waive his rights under the
<u>Miranda</u> decision, because he was under the influence of alcohol he
had consumed before his arrest at the time of the interviews.

Wyatt made four statements, all consistent with each other, on
four separate occasions. The facts and, therefore, the law as to each
are different.

### A.

### IN RE: THE STATEMENT HEARD BY DEPUTY BURKS

On the night of the shooting Deputy Burks was talking to
Deputy McMichael, when he heard Wyatt say: "...Yes sir, I shot him...

13

." (R-20) It is clear that this statement was not in response to police

questioning. It was volunteered.

In the <u>Miranda</u> opinion itself the United States Supreme

Court wrote:

> ...There is no requirement that police stop a person
> who enters a police station and states that he wishes
> to confess to a crime, ...or a person who calls the
> police to offer a confession or any other statement he
> desires to make. *Volunteered statements of any kind
> are not barred by the Fifth Amendment and their
> admissibility is not affected by our holding today... .*
> (<u>Miranda V. Arizona</u>, 384 U.S. 436, 478, 16 L.Ed.2d.
> 694, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974, [1966];
> emphasis supplied.)

Justice Cook of the Alabama Supreme Court summed up the rule

in <u>Ex parte Clark</u>, (728 So.2d. 1126, [Ala, 1998]; death sentence

reversed on unrelated grounds), writing:

> ..." '<u>Miranda</u> has never been held to apply to
> statements voluntarily made by defendants. *If a
> defendant spontaneously volunteers information, either
> before or after being given the <u>Miranda</u> warnings, those
> statements need not be suppressed.*' <u>United States v.
> Edwards</u>, 885 F.2d 377, 387 (7th Cir.1989). See also
> <u>Crawford v. State</u>, 479 So.2d 1349, 1352
> (Ala.Cr.App.1985) ('*An unsolicited remark, not in
> response to any interrogation, does not fall within* the
> <u>Miranda</u> rule'); <u>United States v. Lawrence</u>, 952 F.2d
> 1034, 1036 (8th Cir.[1992] ) ('The protections afforded
> a suspect under [Miranda ] apply only when the
> suspect is both in custody and being interrogated. *A
> voluntary statement made by a suspect, not in response
> to interrogation, is not barred by the Fifth Amendment*

14

and *is admissible with or without the giving of Miranda warnings.*'), cert. denied, 503 U.S. 1011, 112 S.Ct. 1777, 118 L.Ed.2d 434 (1992).

   " 'Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated ['].... Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the holding in Miranda ].' Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

   See also Britton v. State, 631 So.2d 1073, 1078 (Ala.Cr.App.1993); Williams v. State, 601 So.2d 1062, 1072 (Ala.Cr.App.1991)." Worthington v. State, 652 So.2d 790, 792-93 (Ala.Cr.App.1994)... . (728 So.2d. 1126, 1132)

Obviously, the statement heard by Deputy Burks was

admissible.

### B.

### IN RE: THE STATEMENT TO DEPUTY McMICHAEL

Before actually questioning Wyatt, Deputy McMichael read him

a Miranda warning, and Wyatt acknowledged understanding his

rights and waived them. The ensuing statement appears to be the

only one of Wyatt's several statements to which Wyatt's argument on

15

appeal has any applicability[5]. Wyatt's submission should be rejected for at least two reasons.

First, Wyatt apparently assumes that, since there was probable cause to arrest him, he was in custody as soon as the officers arrived at the hospital. However, at the time Deputy McMichael questioned Wyatt, no officer had undertaken any action which would have suggested to a reasonable innocent person in Wyatt's position that he would not be permitted to leave shortly. Of course, "...There is no constitutional right to be arrested...." Hoffa V. United States, 385 U.S. 293, 310, 17 L.Ed.2d. 374, 386, 87 S.Ct. 408, (1966).

Miranda warnings are necessary only incident to *custodial interrogation*. Beckwith V. United States, 425 U.S. U.S. 341, 48 L.Ed.2d. 1, 96 S.Ct. 1612, (1976); Berkemer V. McCarty, 468 U.S. 420, 82 L.Ed.2d 317, 104 S.Ct. 3138, (1984); State V. Jude, 686 So.2d. 528, (Ala.Crim.App, 1996); cert. quash. *sub nom* Ex parte Jude, 686 So.2d. 536, (Ala, 1996). And, whether a party is in custody is controlled by an objective standard, i.e. whether the

---

[5] As authority, Wyatt cites only City Of Montgomery V. Weldon, (280 Ala. 463, 195 So.2d. 110, [1967]), which appears to be remarkably off the mark.

16

officers *did* something which would lead a *reasonable innocent person* to believe that they will not be free to leave shortly. <u>Florida V. Bostick</u>, 501 U.S. 429, 437-438, 115 L.Ed.2d. 389, 400, 111 S.Ct. 2382, (1991); <u>Michigan V. Chesternut</u>, 486 U.S. 567, 574, 100 L.Ed.2d. 565, 572, 108 S.Ct. 1975, (1988). The officers' unarticulated plans, (<u>United States V. Mendenhall</u>, note 6, 446 U.S. 544, 554, 64 L.Ed.2d. 497, 509, 100 S.Ct. 1870, [1980]), and suspicions, (<u>Stansbury V. California</u>, 511 U.S. 318, 128 L.Ed.2d. 293, 114 S.Ct. 1526, [1994]), are irrelevant, as are a party's subjective feelings about his situation. <u>State V. Jude</u>, above. A person may not be "in custody" for <u>Miranda</u> purposes, even though he is questioned at a police station, (<u>Oregon V. Mathiason</u>, 429 U.S. 492, 50 L.Ed.2d. 714, 97 S.Ct. 711, [1977]), or is under arrest. <u>Berkemer V. McCarty</u>, above. See also <u>Illinois V. Perkins</u>, 496 U.S. 292, 110 L.Ed.2d. 243, 110 S.Ct. 2394, (1990).

The evidence in this case clearly shows that at the time Wyatt was questioned by Deputy McMichael, no officer had done anything, which would have led a reasonable innocent person in Wyatt's position to think that he would not be allowed to leave shortly. Although Deputy McMichael gave Wyatt a <u>Miranda</u>

warning, the <u>Miranda</u> procedure did not apply, and Wyatt's argument based on <u>Miranda</u> is due to be rejected.

The second reason why Wyatt's claim that his waiver was involuntary, because he was under the influence of alcohol, should be rejected is that Wyatt's intoxicated condition was not the result of state action.

Few human actions are absolutely free, in that they are not in any way influenced by external factors. A defendant's decision to make a statement may be influenced by such things as feelings of guilt, a desire to excuse or at least explain his behavior, or to exculpate others. The law does not consider these factors relevant to the question of a statement's admissibility under the Federal or State Constitutions. Neither the Federal nor the State Constitution makes any reference to "involuntary" confessions or statements. The Federal Constitution provides:

> ...No person... shall be *compelled* in any criminal case to be a witness against himself... . (<u>United States Constitution</u>, 1788, Amendment V, 1791; emphasis supplied.)

The State Constitution makes a similar provision:

> ...That in all criminal prosecutions, the accused... shall not be *compelled* to give evidence against

18

> himself... . (Alabama Constitution, 1901, Article I,
> Section 6; emphasis supplied.)

In light of this language, the courts hold that even an involuntary

confession is not inadmissible in a criminal trial, unless it is

*compelled* by state action, which is intended to force a party to give

evidence.

Thus, in Colorado V. Connelly, (479 U.S. 157, 93 L.Ed.2d.

473, 107 S.Ct. 515, [1986]), the United States Supreme Court,

while accepting the state court finding of fact that Connelly's

confessions were involuntary, because they were the product of his

mental illness, rejected the state court ruling that the U.S.

Constitution required the suppression of the confessions. The

Supreme Court ruled that, since Connelly's mental condition was

not the product of state action, his confessions were not *compelled*

within the meaning of the Fifth Amendment. The Court wrote:

> ... We hold that coercive police activity is a necessary
> predicate to the finding that a confession is not
> "voluntary" within the meaning of the Due Process
> Clause of the Fourteenth Amendment.  We also
> conclude that the taking of respondent's statements,
> and their admission into evidence, constitute no
> violation of that Clause... . ( 479 U.S. 157, 167, 93
> L.Ed.2d. 473, 484.)

19

This Honorable Court has reached the same conclusion under the State Constitution. State V. Austin, 596 So.2d. 598, (Ala.Crim.App, 1991); cert. quash; Baker V. State, 599 So.2d. 60, 63, (Ala.Crim.App, 1991); Brooks V. State, 599 So.2d. 1238, 1240, (Ala.Crim.App, (1992).

This principle is not limited to mental illness; it applies to self-induced intoxication. Rheuark V. State, 601 So.2d. 135, 138-139, (Ala.Crim.App, 1992), cert. den.

In the instant case, Wyatt's consumption of alcohol prior to his arrest cannot be in anyway attributed to the police. There is no basis for a claim that Wyatt's statements were compelled by state action.

Wyatt's' claim has no basis in law. Rheuark V. State, above. It was therefore, correctly rejected by the Trial Judge.

C.

IN RE: SUBSEQUENT STATEMENTS

The waivers and statements made by Wyatt the morning after the murder and subsequently were shown to have been made while he was sober. Obviously, Wyatt's arguments based on his being intoxicated are inapposite.

20

III.

IN RE: THE CHARGE TO THE JURY

Wyatt claims that the Trial Court violated the rule of Cage V. Louisiana, (498 U.S. 39, 112 L.Ed.2d. 339, 111 S.Ct. 339, [1990]), in charging the jury on reasonable doubt. His Honor's charge bears no resemblance to the language condemned in Cage. In addition, as recognized by this Honorable Court in Williams V. State, (710 So.2d. 1276, 1334, [Ala.Crim.App, 1996]; aff'd. *sub nom* Ex parte Williams, 710 So.2d. 1350, [Ala, 1997]; cert. den. 524 U.S. 929, 141 L.Ed.2d. 699, 118 S.Ct. 2325.), Cage was overruled in Estelle V. McGuire, (note 4, 502 U.S. 62, 72, 116 L.Ed.2d. 385, 399, 112 S.Ct. 475, [1991]).

The Court's charge is unobjectionable. Victor V. Nebraska, 511 U.S.1,127 L.Ed.2d. 583, 114 S.Ct. 1239, (1994); Ex parte Brooks, 695 So.2d. 184, 192, (Ala, 1997); cert. den. 522 U.S. 893, 139 L.Ed.2d. 164, 118 S.Ct. 233.

However, none of this is properly before this Honorable Court, because no objection on this ground was made to the Court's charge in the Trial Court.

21

The only objection Wyatt made to the Court's oral charge related to the failure to charge on criminally negligent homicide. (R-170) It is hornbook law that an objection to the Court's oral charge to the jury cannot be made for the first time on appeal. Rule 21.1 A.R.Cr.P; <u>Biddie V. State</u>, 516 So.2d. 846, (Ala, 1987). As the Supreme Court wrote in <u>Ex parte Beavers</u>, (598 So.2d. 1320, [Ala, 1992]):

> ...Because this Court concludes that <u>Cage</u> [<u>V. Louisiana</u>, 498 U.S. 39, 112 L.Ed.2d. 339, 111 S.Ct. 339, (1990)] represents an application of settled precedent to a particular fact situation and not a "clear break" with the past[6], we hold that Alabama law requiring a timely objection to the trial court's jury charges is not suspended. See A.R.Crim.P., Rule 21.1; see also <u>Biddie v. State</u>, 516 So.2d 846 (Ala.1987); <u>Steeley v. State</u>, 533 So.2d 665 (Ala.1988), cert. denied, 490 U.S. 1026, 109 S.Ct. 1759, 104 L.Ed.2d 195 (1989); <u>Kyser v. State</u>, 513 So.2d 68 (Ala.Crim.App.1987); <u>Holmes v. State</u>, 497 So.2d 1149 (Ala.Crim.App.1986). We hold that Beavers, by his failure to object at trial, is procedurally barred from raising the issue of whether the trial court properly instructed the jury on reasonable doubt... . (598 So.2d. 1320, 1324-1325)

Therefore, this claim is not properly before this Honorable court.

---

[6] Obviously, this language does not apply to the instant case, since Wyatt was tried long after the <u>Cage</u> decision.

22

<u>CONCLUSION</u>

In conclusion, the appellee, the State of Alabama, respectfully submits that there is no error in the record, and the appellee prays that the judgment and sentence of the Honorable Circuit Court of Autauga County, Alabama, in this case be affirmed.

Respectfully submitted,

BILL PRYOR
PRY0032
ATTORNEY GENERAL
By:

JOSEPH G. L. MARSTON, III
Mar032
ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR THE STATE
OF ALABAMA, APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

23

APPENDIX

## CODE OF ALABAMA, (1975)

### TITLE 13A

**Section 13A-5-6.  SENTENCES OF IMPRISONMENT FOR FELONIES.**

(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:

(1) For a Class A felony, for life or not more than 99 years or less than 10 years.

(2) For a Class B felony, not more than 20 years or less than 2 years.

(3) For a Class C felony, not more than 10 years or less than 1 year and 1 day.

(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years.

(5) For a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years.

(b) The actual time of release within the limitations established by subsection (a) of this section shall be determined under procedures established elsewhere by law.

**Section 13A-6-2.  Murder.**

(a) A person commits the crime of murder if:

(1) With intent to cause the death of another person, he causes the death of that person or of another person; or

(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave

25

risk of death to a person other than himself, and thereby causes the death of another person; or

(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.

(b) A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself. The burden of injecting the issue of killing under legal provocation is on the defendant, but this does not shift the burden of proof. This subsection does not apply to a prosecution for, or preclude a conviction of, manslaughter or other crime.

(c) Murder is a Class A felony; provided, that the punishment for murder or any offense committed under aggravated circumstances, as provided by article 2 of chapter 5 of this title, is death or life imprisonment without parole, which punishment shall be determined and fixed as provided by article 2 of chapter 5 of this title or any amendments thereto.

26

## CERTIFICATE OF SERVICE

I, Joseph G. L. Marston, III, Assistant Attorney General of Alabama and one of the attorneys for the State of Alabama, the appellee in this cause, do hereby certify that on this the 14th. day of September, 2000, I did serve copies of the foregoing on the attorney* for the appellant, and his former attorney**  by mailing the same to them, first class postage prepaid and addressed as follows:

> Mr. Gary A. C. Backus, Esq.*
> Attorney at Law
> Gary A. C. Backus, L.L.C.
> Post Office Box 1804
> Montgomery, Alabama, 36102-1804

> Mr. Robert L. Bowers, Esq.**
> Bowers & Bowers
> Attorneys at Law
> 401 Second Avenue, North
> Clanton, Alabama, 35045

JOSEPH G. L. MARSTON, III
MAR032
ASSISTANT ATTORNEY GENERAL

27

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300


NUMBER 28307